02-1082-cr
United States v. Esteban Gonzalez

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 9th day of February, two thousand twelve

Present:      JOHN M. WALKER, JR.,
              PIERRE N. LEVAL,
              ROSEMARY S. POOLER,
                        *Circuit Judges*.

_____

UNITED STATES OF AMERICA,

                                              *Appellee*,

        -v-                                   02-1082-cr

ESTEBAN GONZALEZ,

                                      *Defendant-Appellant*.

_____

Appearing for Appellee:      Rachel Maimin, Jonathan S. Kolodner, Katherine Polk Failla, Assistant United States Attorneys (of counsel), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, N.Y.

Appearing for Appellant:      Michael Young, New York, N.Y.

Appeal from the United States District Court for the Southern District of New York (Cote, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Appellant Esteban Gonzalez was convicted of assault with a dangerous weapon with intent to do bodily harm, in violation of 18 U.S.C. § 113(a)(3); assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(a)(6); and possession of a prohibited object in prison, in violation of 18 U.S.C. § 1791(a)(2). He was sentenced principally to 150 months' imprisonment. With permission of a motions panel of this court, appellant now reinstates his appeal arising from his January 22, 2002 judgment of conviction. On appeal, Gonzalez asserts a number of infirmities with his conviction and sentence. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

The first issue appellant raises is whether a change to the Rules of Evidence that took place during his trial infringed on his testimonial rights. Appellant's trial in this case began November 27, 2000. Three days later, on December 1, 2000, an amendment to Rule 404 of the Federal Rules of Evidence was scheduled to go into effect. The previous version of Rule 404 provided that character evidence was generally not admissible, except "in a criminal case, evidence of a pertinent trait offered by an accused or by the prosecution to rebut the same." The new version of Rule 404, substantially in effect now, would allow character evidence to be introduced against a defendant who raised evidence of the same character trait in his alleged victim. The Supreme Court order promulgating this rule change indicated that the change was to "take effect on December 1, 2000, and. . . govern all proceedings thereafter commenced and, insofar as just and practicable, all proceedings then pending." *Supreme Court Order,* April 17, 2000, 3 ¶ 2.

Initially, the district court determined that the trial would proceed entirely under the original version of Rule 404, but after hearing argument, Judge Cote determined that the new rule would take effect on December 1, after the trial had already begun. Appellant claims this rule change impinged on his right to testify last, because it made testifying after December 1 more risky for him, as he believed might expose him to cross-examination about the character traits he intended to provide evidence of as to his victim. For this proposition he relies on *Brooks v. Tennessee*, which held that it was unconstitutional to require that a defendant testify before any other defense evidence was presented. 406 U.S. 605, 607 (1972). But the case is simply inapposite. *Brooks* dealt with a complete forfeiture of the right to testify if the defendant did not do so before the rest of his case was put on; here, appellant faced only more thorough impeachment. *United States v. Dunnigan* is instructive on this point. 507 U.S. 87, 96 (1993), *abrogated on other grounds by United States v. Wells*, 519 U.S. 482 (1997). There, the Supreme Court held that imposing an obstruction of justice enhancement on defendants who perjured themselves at trial did not interfere with the right to testify because "a defendant's right to testify does not include a right to commit perjury." *Id*. Obviously the threat of an increased sentence makes it riskier for a defendant to testify at his trial if he would do so untruthfully, but just as a defendant has no right to commit perjury, so too does he have no right to testify unimpeached. Thus while each rule may, on its own, alter the calculus under which a defendant decides when and whether to testify, they impinge only on rights that defendants simply do not have. Further, "[o]ur authorities do not impose a categorical ban on every governmental action affecting the strategic decisions of an accused, including decisions whether or not to exercise constitutional rights." *Id.* Our circuit has also reaffirmed that not every decision by a trial judge

that may affect the timing of a defendant's testimony rises to the level of a *Brooks* violation: "*Brooks* does not constitute a general prohibition against a trial judge's regulation of the order of trial in a way that may affect the timing of a defendant's testimony." *Harris v. Barkley*, 202 F.3d 169, 170 (2d Cir. 2000) (finding no *Brooks* violation the trial judge required a defendant to testify before a delayed witness). Ultimately, while the rule change may have pressured appellant to testify earlier, it threatened only the loss of something he had not the right to do under the new Rule, which is to introduce evidence of the bad character of the victim while remaining free from evidence of his own. Appellant's arguments on this point are rejected.

More importantly, perhaps, if the new rule were to apply to his trial after its effective date, it would apply whether he had already testified or not. Even if appellant had testified about the victim's character for violence before December 1, though he might not have been subject to cross-examination about his own character for violence, the government still would have been permitted to offer other evidence *after* December 1 of that character. He could not then, even by testifying early, have avoided the application of such evidence, and so we reject his arguments.

Appellant also argues that he was prejudiced by the government's delay in bringing charges against him. He contends that, if the trial had been conducted earlier, he could have testified to the victim's character for violence to show that he feared for his own safety without the risk of opening the door to evidence of his own character for violence. While it may be that appellant was disadvantaged by the combination of the timing of his trial and the timing of the rule change, there was no abuse of discretion in the district court's decision to give effect to the new Rule on its effective date. There is no evidence that the government delayed the trial in order to disadvantage appellant, and appellant does not even claim this. Finally, as the district court pointed out, shortly before trial was to begin on November 27, appellant himself requested an adjournment, which would have increased the likelihood that the trial would undisputedly be subject to the new Rule. In consideration of these factors we find that the district court did not abuse its discretion, and we see no reason to set aside the verdict.

Appellant also now argues that the jury charge impermissibly burdened his right to the presumption of innocence, because it included language, now disapproved of, that told jurors that he, as the defendant had "a deep personal interest in the outcome of this case." In *United States v. Gaines*, decided four years after appellant's conviction became final, we held that a jury instruction which indicated that a defendant's "deep personal interest in the result of the prosecution . . . creates a motive for false testimony and, therefore, the defendants' testimony should be scrutinized and weighed with care," impermissibly burdened the presumption of innocence. 457 F.3d 238, 242 (2d Cir. 2006). We did not decide whether merely pointing to a defendant's personal interest without the connection to the motive to lie charge was impermissible, though we did "join those courts that have expressed disapproval"of such an instruction. *Id.* at 247.

We note here that *Gaines* indicated its holding was not retroactive. *See id.* at 249 ("In sum, *in future cases,* district courts should not instruct juries to the effect that a testifying defendant has a deep personal interest in the case." (emphasis added)). Only because of the unusual procedural posture of this case can appellant make a *Gaines* argument at all. But even if we apply *Gaines* and its progeny to appellant's case, while we agree the language used would be disapproved of today, it does not rise to the level of an impermissible burden on the presumption

3

of innocence. Unlike *Gaines* and the other case upon which appellant relies, *United States v. Brutus*, 505 F.3d 80, 88 (2d Cir. 2007), there is no language in the district court's charge which suggested that a defendant's deep personal interest made him more likely to lie or that his testimony should be scrutinized with any special care relative to other interested parties. Rather, the district court instruction here indicated to jurors that the deep personal interest of the defendant

> does not mean, however, that he is not capable of being truthful. It is for you to decide to what extent, if at all, his interest has affected his testimony. You should examine and evaluate his testimony just as you would the testimony of any witness with an interest in the outcome of this case. You should not disregard or disbelieve his testimony simply because he is charged as a defendant in this case.

The instruction at issue then was proper when it was given, and while not ideal under *Gaines* and *Brutus*, was not so prejudicial so as to warrant reversal.

Appellant also argues that the failure of the indictment to allege which definition of prohibited object he was charged with violates his right to a jury trial under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Apprendi* held that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 476. The statute at issue here, 18 U.S.C. § 1791, provides for differing levels of appropriate punishment depending on which subsection was charged, and as appellant correctly notes, his indictment does not specify with which subsection he was being charged. But though the indictment did not announce the prohibited object with which he was charged, the jury was actually instructed, by special verdict sheet, to so find beyond a reasonable doubt. "The Supreme Court has ruled that an *Apprendi* violation concerning an omission from an indictment is not noticeable as plain error where the evidence is overwhelming that the grand jury would have found the fact at issue." *United States v. Confredo,* 528 F.3d 143, 156 (2d Cir. 2008) (holding objected to omission in the grand jury harmless where there "was no doubt the grand jury would have found" the omitted charge) (*citing United States v. Cotton*, 535 U.S. 625, 631-34 (2002)). Where, as here, there is overwhelming and uncontroverted evidence of an element omitted from an indictment, there is no plain error. *Cotton*, 535 U.S. at 634. We have no trouble concluding that, given that evidence, along with the petit jury's finding, that the grand jury would have found the fact at issue, and so any *Apprendi* violation is not noticeable.

Appellant also challenges the district court's decision to run his sentence consecutively to another case. While we have already determined that the district court's original decision was in error because the sentence in the other case had not yet become final, *see United States v. Gonzalez*, 291 Fed. Appx. 392, 395, 2008 WL 4104252, *3 (2d Cir. 2008), the remedy for this wrong has already been achieved by means of the resentencing in the other case. Judge Rakoff has now, lawfully and properly, determined that 105 months of the 210 month sentence on appellant's felon-in-possession case should run concurrently to Judge Cote's sentence and 105 months should run consecutively. *United States v. Gonzalez*, 2010 WL 1631496 (S.D.N.Y. 2010). We affirmed this imposition of sentence in *United States v. Gonzalez*, 415 Fed. Appx. 336, 337 (2d Cir. 2011). Only one determination can be or need be made as to how two sentences will run in terms of concurrence or consecutiveness. In this case, how appellant's two

4

prison terms will be served has already been determined by Judge Rakoff and affirmed by this court. There is nothing left for Gonzalez to appeal on this issue.

We have examined appellant's remaining contentions and found them to be without merit.

Accordingly, the judgment of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk